IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KENNETH PAGAN, on behalf of himself :
and all others similarly situated,
    Plaintiff,
:     CIVIL NO. 08-0751
    v.

THE NEW WILSON'S MEATS, INC. :
et al.
    Defendants.

**MEMORANDUM**

**Jones, J.**                                                                                                                               May 17, 2011

### I.    Introduction

The above-referenced matter involves allegations by Plaintiff Pagan that Defendants (discount meat/grocery purveyors) knowingly failed to pay Plaintiff - and other former and current employees who were/are similarly situated - for lunch and dinner breaks they did not take, and that Defendants failed to pay their employees the proper overtime rate. Accordingly, Plaintiff seeks class certification pursuant to Fed.R.Civ. P. 23 for claims brought under Pennsylvania's Minimum Wage Act of 1968 (43 P.S. §333.101 *et seq.*)(hereinafter "MWA") and Wage Payment Collection Law (43 P.S. § 260.1 *et seq.*)(hereinafter "WPCL").[1]

In seeking class certification, Plaintiff Pagan initially proposed himself as class representative. However, counsel for Plaintiff subsequently proposed that another former

---

[1] This Court notes that Plaintiff originally brought a collective action under the Fair Labor Standards Act (29 U.S.C. §201 *et seq.*)("FLSA"). However, after discovering that former and current employees of Defendants would not "opt in," Plaintiff decided to withdraw his class claims under FLSA and pursue certification on the basis of his state law claims.

1

employee of Defendants, Thomas Hopper, be "additionally" approved as class representative.[2]

For the reasons which follow, this Court declines to approve either candidate and finds that the matter is inappropriate for certification.

---

[2] At a hearing held on August 2, 2010 wherein Mr. Pagan was presented as a potential class representative, the following exchange occurred between defense counsel and Mr. Pagan:

> Q: And do you know Mr. Hopper?
> A: No, sir.
> Q: Did you ever read Mr. Hopper's deposition testimony?
> A: No, I don't even know who Mr. Hopper is.
> Q: Well –
> A: Who's Mr. Hopper?
> A: Are you aware of the fact that Thomas Hopper has asked for the opportunity to become a co-class representative along with you in this case?
> A: Yes. I did hear that from my attorney, yes, sir.
> Q: Okay. Did you ever read Mr. Hopper's deposition testimony?
> A: No, sir.
> Q: Did you ever read his testimony that he gave before his Honor?
> A: No, sir.
> Q: Are you aware that Mr. Hopper worked at Outlet II for 19 more than three years -- for more than 18 months -- I'm sorry -- for more than 18 months?
> A: I didn't know that.
> Q: Are you aware that Mr. Hopper testified that at no time during the period of time that you worked at Outlet II did anybody ever make him come back early from a meal break? Did you know that?
> A: No, I did not.

(Pagan Hr'g Tr. 46-47, Aug. 2, 2010.) Although the fact that Mr. Pagan was unfamiliar with Mr. Hopper is not dispositive of the instant certification issue, it does bear on this Court's consideration of Mr. Pagan's familiarity with and knowledge regarding the lawsuit, and should therefore be considered in assessing his adequacy as a class representative.

II.   **Discussion**

   A.   **Rule 23(a)**

Fed.R.Civ.P. 23 governs class actions and has been explained as follows:

> In order to be certified, a class must satisfy the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613, 138 L. Ed. 2d 689, 117 S. Ct. 2231 (1997). If these Rule 23(a) requirements are satisfied, the court must also find that the class is maintainable under Rule 23(b)(1), (2), or (3). Fed. R. Civ. P. 23(b). [R]ule 23(b)(3) provides that common questions must predominate over any questions affecting only individual members, and class representation must be superior to other available methods for the fair and efficient adjudication of the controversy. The Rule 23(b)(3) predominance inquiry tests whether the class is sufficiently cohesive to warrant adjudication by representation, and mandates that it is far more demanding than the Rule 23(a)(2) commonality requirement. *Amchem*, 521 U.S. at 623-24.

*In re LifeUSA Holding*, 242 F.3d 136, 143-144 (3d Cir. 2001). *See also Panetta v. SAP Am., Inc.*, 2006 U.S. Dist. LEXIS 17556, at **2-3 (E.D. Pa. Apr. 6, 2006)(noting that under Rule 23(a), "a purported class must: (a) be so numerous that joinder of all members individually is impracticable; (b) have a question of law or fact common to all members; (c) have a class representative whose claims or defenses are typical to the rest of the class; ***and*** (d) have a class representative who will be able to fairly and adequately protect the interests of the class as a whole.")(citing Fed.R.Civ.P. 23)(emphasis added).   Moreover, "[t]he district court has a good deal of discretion in determining whether or not to certify a class." *Mazus v. Dep't of Transp.*, 629 F.2d 870, 876 (3d Cir. Pa. 1980), *cert. denied,* 449 U.S. 1126 (1981).

   In assessing a certification request,

> [P]roper analysis under Rule 23 requires rigorous consideration of all the evidence and arguments offered by the parties. It is incorrect to state that a plaintiff need only demonstrate an "intention" to try the case in a manner

3

> that satisfies the predominance requirement. Similarly, invoking the phrase "threshold showing" risks misapplying Rule 23. A "threshold showing" could signify, incorrectly, that the burden on the party seeking certification is a lenient one (such as a prima facie showing or a burden of production) or that the party seeking certification receives deference or a presumption in its favor. So defined, "threshold showing" is an inadequate and improper standard. '[T]he requirements of Rule 23 must be met, not just supported by some evidence.'

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 321 (3d Cir. Pa. 2008)(citation omitted).[3]

Plaintiff herein has failed to satisfy any of the requirements for sustaining a class action.

### I. Numerosity

Despite plenty of opportunities to do so, Plaintiff Pagan has yet to demonstrate the existence of any party - aside from himself or Mr. Hopper - who might wish to participate in this lawsuit. Although counsel for Plaintiff has summarily indicated in briefing that they "estimate that the Class includes approximately one hundred twenty (120) to three hundred fifty (350) current and former low-income hourly-paid discount meat and grocery store employees at Defendants' Outlet II and New Wilson's locations over the course of the Class period," evidence of same has not evolved through discovery, additional briefing or throughout the course of three separate court hearings. (Doc. No. 76, ¶ 11.) Instead, in his Motion for Class Certification, Plaintiff names only six (6) employees whose time cards contain alleged discrepancies. (Doc. No. 76, ¶¶ 26-36.)[4,5] Moreover, as Defendants correctly point out in their Opposition to

---

[3] Relying upon case law from nearly four decades ago, Plaintiff argues that "The resolution of a class certification motion should not become a 'preliminary inquiry into the merits of the case'" and states that "a Court must assume the truth of the factual assertions contained in the Complaint." (Doc. No. 76, 14.) Clearly, this is not an appropriate standard for the court to employ in light of *Hydrogen Peroxide*.

[4] In support of certification, Plaintiff does provide an exhibit entitled "Wilson Outlet II Audit of Sixteen Sample Weeks," which is a chart containing the names of approximately 50

4

Certification, Plaintiff has provided no evidence that the time cards cited by Plaintiff "represent a clock out for a compensable 'break,' as opposed to a non-compensable 'meal break.'" (Doc. No. 88, ¶¶ 26-36.) Plaintiff did not call any of these individuals (with the exception of Messrs. Pagan and Hopper) to controvert this assertion by Defendants at the certification hearing and as will be discussed below, neither Mr. Pagan nor Mr. Hopper was in fact able to do so.

During the certification hearing, Mr. Pagan listed seven individuals with whom he spoke about the instant lawsuit, yet none of these individuals expressed any interest in becoming

---

employees (including Mr. Hopper) of Outlet II, along with calculations of "Unpaid Time." (Doc. No. 76-1, Ex. 2.) However, for reasons made readily apparent by Messrs. Pagan and Hopper during the certification hearing, these numbers cannot be taken at face value to establish the potential existence of liability. In fact, the codes themselves, which include "Comment A" (to refer to "Other"), "Comment H" (to refer to the ambiguous term "Comment"), and "Comment M" (for which there is no definition) as reasons for time being deducted, make it impossible for any precise determination to be made regarding the calculation of time, absent the testimony of each particular employee at issue. The same is true for the time cards of eight of these same individuals, which were produced as an exhibit during the hearing but for which no supplemental testimony was provided. Moreover - and perhaps most importantly - Plaintiff has given no indication that any of these individuals believe they have a claim against Defendants or would wish to pursue any such claim.

[5] Putting aside any joint employer issue, this Court recognizes that Messrs. Pagan and Hopper performed all of their job duties at - and received all of their paychecks from - Outlet II. As such, a question arises regarding whether or not they even have standing to bring claims on behalf of New Wilson's employees. In his Motion for Certification (and as noted hereinabove), Plaintiff does in fact include employees of the New Wilson's store as part of the purported "class," for purposes of satisfying the numerosity requirement of Rule 23. (Doc. No. 76, 18.) However, on January 27, 2010, Magistrate Judge Lynne A. Sitarski denied Plaintiff's Motion to Compel discovery regarding Defendant New Wilson's Meats, Inc., including the time cards that would be necessary to establish any claims against said Defendant by potential class members. (Doc. No. 86.) Still, in a Reply Brief which was filed on March 8, 2010 and in a Supplemental Reply filed on August 16, 2010, Plaintiff continues to cite to New Wilson's employees as a basis for obtaining certification. (Doc. No. 101, n. 1 & 11; Doc. No. 112, n. 1.) Inasmuch as Plaintiff has only submitted the time cards of Outlet II employees for consideration by the court, any issue regarding standing as it pertains to the New Wilson's store is rendered moot for purposes of certification.

5

involved with the litigation. (Pagan Dep. 12:4-25, 12:1-25, 14:1-25, 15:1, January 28, 2009.)

Clearly,

> While the law is well-established that a plaintiff "need not show the exact number of potential [members] in order to satisfy the [numerosity] requirement," it is equally well-established that "the plaintiffs do have the burden of showing that the size is such that the joinder of all members is impracticable. ***Mere speculation as to the number of members who may be involved is not sufficient to satisfy Rule 23(a)(1)***."

*Jackson v. SEPTA*, 260 F.R.D. 168, 187 (E.D. Pa. 2009)(citations omitted)(emphasis added). *See also Susquehanna v. H & M, Inc.*, 98 F.R.D. 658, 664 (M.D. Pa. 1983)("[T]he exact number of members of a plaintiff class need not be ascertained for the numerosity requirement to be satisfied [however,] mere speculation and unsupported conclusions as to the number of members of a class is inadequate."). To that end, "[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-227 (3d Cir. Pa. 2001), *cert. denied,* 536 U.S. 958 (2002). *See also Davis v. Thornburgh*, 903 F.2d 212, 233 (3d Cir. Pa. 1990)(noting that a minimum of 40 proposed class members is "generally considered ample for a presumption of numerosity."), *cert. denied,* 498 U.S. 970 (1990).

In *Panetta v. SAP Am., Inc.*, 2006 U.S. Dist. LEXIS 17556 (E.D. Pa. Apr. 6, 2006)*,* the court noted as follows:

> Mr. Panetta makes general allegations in his First Amended Class Action Complaint that the class satisfies all four of the requirements in Rule 23(a). There are, however, deficiencies with regard to all four prongs. First, though there is no specific number below which a purported class fails to fulfill the numerosity requirement, *see Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001), if a class number falls below 40, it should not generally be qualified. *Id.* Here,

> plaintiff merely recited that the size of the purported class is "so numerous . . . making joinder impracticable." Further, in his response to defendants' assertion in their motion to strike that the purported class is only six people, Mr. Panetta argued only that there were "many" plaintiffs. He did not plead a specific number of plaintiffs, nor did he even attempt to estimate the number of individuals in the purported class.

*Id*. at **5-6.

The number of potential class members cited by Plaintiff herein is nothing more than pure speculation with no basis in fact. Other than Messrs. Pagan and Hopper, there has been no evidence of any other individual(s) who *might* have legitimate claims against Defendants or who would even be interested in pursuing said claims, despite discovery having been closed for quite sometime now.

Aside from the foregoing, Plaintiff has failed to "clearly define" the purported "class." In denying certification, the court in *Daniels v. Baritz*, 2004 U.S. Dist. LEXIS 14649 (E.D. Pa. July 29, 2004) noted:

> The references to "sustained damages as a result of renting" and "subjected by defendants to one or more *illegal, unfair or otherwise improper* practices" exemplify that the Class definition is too indefinite. And, where membership in the class is based upon subjective considerations applicable to each potential class member, as it is here, the class is simply too amorphous for recognition as a class. "The proposed class may not be 'amorphous, vague, or indeterminate' and it must be 'administratively feasible to determine whether a given individual is a member of the class.'" Plaintiff's Class definition is not precise, objective, nor is it presently ascertainable.

*Id.* at **4-5 (emphasis in original)(citations omitted).

In this case, Plaintiff seeks certification of "[a] class of current and former low-income hourly-paid discount meat and grocery store employees of Defendants" based upon Plaintiff's contention that "Defendants systematically violated and continue to violate the rights guaranteed

by the Pennsylvania Minimum Wage Act of 1968 and the Pennsylvania Wage Payment Collection Law, by maintaining a pattern and practice of not paying wages for all hours worked." (Doc. No. 76, 14)(internal citations omitted.) Subjective considerations such as whether or not each break for each purported "class" member was compensable or not and whether each purported "class" member appropriately "clocked" out for said breaks, would be required to determine liability and damages in this case. As such, the purported "class" herein "is simply too amorphous for recognition as a class." *Daniels* at \*5.

Moreover, factors such as potential expense, time, logistics and manageability must also be taken into consideration when determining whether or not each plaintiff should be joined individually or whether a class should be certified. As such,

> The touchstone of the numerosity inquiry is not the number of plaintiffs, but the practicability of joining those plaintiffs. *Jackson v. Southeastern Penn. Transp. Auth.*, 260 F.R.D. 168, 186 (E.D. Pa. 2009). Practicability "is a subjective determination based on number, expediency, and inconvenience of trying individual suits." *Id*. Practicability also depends on the geographic dispersion of the proposed class. *See Vinson v. Seven Seventeen HB Phila. Corp.*, No. 00-CV-6334, 2001 U.S. Dist. LEXIS 25295, 2001 WL 1774073, at \*17 (E.D. Pa. Oct. 31, 2001) ("Joinder of these [11] individuals alone is severely impracticable, not because of their number, but because of their geographical dispersion.").

*Am. Sales Co., Inc. v. SmithKline Beecham Corp.*, 2010 U.S. Dist. LEXIS 120177, at \*\*12-13 (E.D. Pa. Nov. 10, 2010). *See also Osgood v. Harrah's Entm't, Inc.*, 202 F.R.D. 115 (2001)("Other factors should also be considered as part of the Rule 23(a)(1) inquiry, including whether judicial economy weighs in favor of class certification, and the geographic dispersion of class members."); *Susquehanna v. H & M, Inc.*, 98 F.R.D. 658, 664 (M.D. Pa. 1983)("[T]he Court must consider whether or not joinder of all parties desiring to pursue claims would be impracticable."); *Meyer v. CUNA Mut. Group*, 2006 U.S. Dist. LEXIS 4478, at \*21 (W.D. Pa.

Jan. 25, 2006)("[P]racticability of joinder depends on a number of factors, including: the size of the class, ease of identifying members and determining addresses, ease of service on members if joined, geographical dispersion and whether proposed members of the class would be able to pursue remedies on an individual basis.").

In this case, "geographic dispersion" does not exist (the majority of the purported "class" members are located within the immediate Philadelphia area)[6] and neither the numbers, expediency, nor inconvenience of trying individual suits has been established by Plaintiff.

Accordingly, Plaintiff has failed to satisfy Subsection (a) of Rule 23 regarding numerosity and as such, this Court is prohibited from certifying the class. However, for the sake of thoroughness, this Court will address the remaining factors.

### ii. Common Question of Law or Fact

Assuming Plaintiff was able to meet the numerosity requirement of Rule 23, he would then have to establish that a common question of law or fact existed between himself and the other potential class members. Neither Mr. Pagan nor Mr. Hopper can do so.

It has been recognized that . . .

> The concepts of commonality and typicality are broadly defined and tend to merge. Both criteria seek to assure that the action can be practically and efficiently maintained and that the interests of the absentees will be fairly and adequately represented. Despite their similarity, however, commonality and typicality are distinct requirements under Rule 23.

*Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

Specifically, "[t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Id.*

---

[6] (Doc. No. 76 at 29.)

In this case, neither Mr. Pagan nor Mr. Hopper was able to demonstrate the existence of any common question of law or fact between themselves and other prospective class members. In fact, when questioned about his discussion with another purported class member, Mr. Pagan conceded that "[t]he only thing that was similar based upon [his] conversation with Mr. Gordon was the fact that both of [them] were fired and [their] last paychecks were not paid *.*.*.* " (Pagan Dep. 16:12-18.) The second person Mr. Pagan spoke with about the lawsuit (an unnamed blonde haired, blue-eyed male who worked in the deli with him), provided no information of similar circumstances and instead informed Mr. Pagan that he only worked part-time and never worked any overtime.[7] Additionally, this gentleman informed Mr. Pagan that he did not want to become involved with the instant lawsuit. (Pagan Dep. 22:24-25, 23:1-25, 24:1-25, 26:1-25, 25:1-25, 26:1-25, 27:1-23.) The next individual, "Clarence," told Mr. Pagan he had been terminated from his employment with Defendants because he wasn't doing his job and was taking extended breaks. (Pagan Dep. 31:3-8.) Clarence provided no additional details to Mr. Pagan which would demonstrate that they could potentially have similar legal claims or that similar facts would entitle them to similar relief.

Any commonality between Plaintiff and the remaining proposed class members is even less compelling than the situations set forth above:

- When Plaintiff attempted to speak with a proposed class member named "Vincent" who also worked in the Deli with him during the relevant time period, Vincent refused to speak with Mr. Pagan, hung up on him, and has not made any attempt to become involved in the instant litigation. (Pagan

---

[7] Mr. Pagan testified that he first called this person to obtain information about difficulties he was experiencing in obtaining unemployment compensation benefits because this individual had apparently been on unemployment before and was familiar with the process. (Pagan Dep. 23:18-25, 19:1-8.) Clearly, this issue is not relevant herein.

>   Dep. 18:12-25; 19:11-17; 32:10-17);

- Plaintiff has been unable to locate or contact the next proposed class member, named "Maria." (Pagan Dep. 32:18-22);

- When Plaintiff approached Josh Rivera about joining the class, Mr. Rivera said he did not want any involvement in the litigation. Additionally, when asked, Mr. Rivera did not tell Plaintiff that he had ever been paid in cash or that he had ever been denied his proper lunch or dinner break. (Pagan Dep. 33:24-25; 34:1-2, 23-25; 35:1-25);

- After expressing his loyalty to Defendants, Jeffrey Bibbs similarly declined to get involved with the instant litigation. Plaintiff testified that although Mr. Bibbs had told him Defendants paid him in cash, he never told him how many times and whether it was for his overtime work or straight time. Additionally, Mr. Bibbs never indicated that he was not given his proper break times. (Pagan Dep. 38:19-23; 40:10-11; 41:18-25; 42:1-5; 43:10-19);

- Next, Plaintiff met with "Maleak" at Defendants' Venango Street location, wherein Plaintiff informed Maleak of the long-term effects of working in such a cold environment. When Plaintiff told Maleak about the lawsuit and asked him if he was working for cash, not being paid full overtime rates, or being denied meal breaks, Maleak simply responded that overtime is not paid at Defendants' stores and acknowledged that his breaks were "rushed." When Plaintiff met with Maleak again, Maleak informed Plaintiff that he did not want to get involved with the litigation. (Pagan Dep. 44:22-25; 45:1-25; 46:1-13; 47, 18-19); and,

- Plaintiff also explained the lawsuit to an "older gentleman" working in the chicken department at the Venango location and asked him if he wanted to join the litigation, but this man simply wished Mr. Pagan luck. (Pagan Dep. 48:1-6).

Plaintiff did testify that he believed a 19 year-old male named "Steven Free" contacted his attorneys about the litigation but Plaintiff provided no further information regarding whether or not Mr. Free had a similar working experience or whether he intended to become a part of the

class. (Pagan Dep. 48:7-20.)[8] Also, and as noted above, Plaintiff attaches an "Audit of Sixteen Sample Weeks" in an exhibit to his Certification Motion, in which various employees of Outlet II are listed, along with a calculation of their "Unpaid Time" for each particular week. (Doc. No. 76-1.) However, for reasons discussed more fully herein, this Court cannot simply rely upon the data provided in Plaintiff's submission.

Mr. Hopper's deposition, as well as the briefing, testimony and arguments presented in this matter, are all similarly devoid of any indication that a class even exists, let alone a class of members with a shared question of fact or law. During the certification hearing, neither Mr. Pagan nor Mr. Hopper could definitively state that they were not properly payed during the relevant period of time. In fact, the majority of the hearing regarding Mr. Hopper's ability to become a class representative, was spent scouring his time cards for alleged discrepancies. Yet, Mr. Hopper was consistently unable to state with any certainty that he was not appropriately paid on any given day. (Hopper Hr'g., 36-58, March 24, 2010.)[9] The same was true for Mr. Pagan. (Pagan Hr'g., 33:5-8; 34:7-12; 37:6-24; 39:6-8, 40:15-25; 41:1-2; 41:10-13, August 2, 2010.) Moreover, neither Mr. Pagan nor Mr. Hopper consistently clocked in and out for meal breaks. (Pagan Hr'g., 33:3-4; 40:19-20; 42:12-17; Hopper Hr'g., 34:20-25; 35:1-2; 41:11-12; 52:17-18; Pagan Dep. 100:20-25; 101:1-4.) As such, it would be impossible for either of these individuals

---

[8] It is unclear as whether Mr. Free was the previously unnamed "blonde hair, blue-eyed" male Plaintiff originally contacted for information regarding unemployment benefits. However, for the reasons set forth herein, this detail is irrelevant.

[9] In fact, Mr. Hopper did not even know when he began working for Defendants, did not know his hourly wage when he began his employment with Defendants, did not know when he received raises or how much they were, did not know when he was terminated from his employment, and did not know what he was earning at the end of his employment. (Hopper Hr'g., 8:14-19; 10:13-18; 12:16-23; 13:1-2; 17:9-25; 18:1-11; 24:10-16; 26:13-17.)

to prove violations on behalf of a class.

The only shared facts between Messrs. Pagan and Hopper, and the purported "class," is that they all worked for Defendants at one time or another and some of them were paid in cash at various times. And again, none of the employees Mr. Pagan spoke with provided information that could sustain a legal claim against Defendants and none of these individuals were interested in bringing a legal claim against Defendants. As such, the "common question of law or fact" contemplated by Rule 23 cannot be satisfied.

### iii. Claims and Defenses of Class Representative Typical to Rest of Class

Subsection (a)(3) of Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed.R.Civ.P. 23(a)(3). The purpose behind the typicality requirement has been explained as follows:

> The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented. The typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees. "Typicality entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based."

*Baby Neal,* 43 F.3d at 57-58 (citations omitted). In other words, "[t]ypicality requires that the court evaluate whether the class representatives' incentives are aligned with those of the proposed class." *Hall v. Best Buy Co.*, 2011 U.S. Dist. LEXIS 31220, at *24 (E.D. Pa. Mar. 24, 2011).

In this case, there is one glaring issue that necessarily precludes any sense of typicality between prospective class members and Mr. Pagan: the defense contends Mr. Pagan was terminated from employment for allegedly stealing products from the store. Although counsel for Plaintiff argues that any such allegations are irrelevant to this Court's certification inquiry, they certainly are because they could provide a defense that would not be applicable to any other prospective class member. Additionally, this Court has been informed that shortly after testifying before this Court for purposes of the instant class certification matter, Mr. Pagan entered a negotiated guilty plea to yet another Robbery charge and was sentenced to a three (3) to six (6) year term of imprisonment. (Edward Rubenstone Ltr., September 8, 2010.)[10] Although this fact, in and of itself, need not necessarily render Mr. Pagan "inadequate" to serve as a class representative, all of the other factors set forth herein do preclude him from serving as such. Similarly, the circumstances of Mr. Hopper's termination from employment preclude a finding of

---

[10] This Court is cognizant that . . .

> [M]ost courts have rejected challenges to class representatives based on allegations of "unrelated unsavory, unethical, or even illegal conduct." This is "irrelevant to the issue of adequacy to represent a class for particular claims or issues." *.*.*.* The only exception to this general rule is that courts may find plaintiffs inadequate to represent the class if their past conduct indicates "that vigorous prosecution of the litigation on behalf of the class will not be fulfilled."

*McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. 246, 251, n 5 (E.D. Pa. 2006)(citations omitted).

However, this Court notes that pursuant to Fed.R.Evid. 609(a)(1), Mr. Pagan's most recent conviction for robbery may be used against him "[f]or the purpose of attacking [his] character for truthfulness." Again, inasmuch as the claims being made by Plaintiff are so reliant upon the accuracy of factual details regarding dates, times and payments, attacks on Mr. Pagan's testimony would necessarily affect the purported "class" in a negative manner. Additionally, Mr. Pagan's ability to be available to counsel, this Court, and the purported "class" throughout this litigation is quite questionable, as evidenced by the two continuances and three court Orders that were necessary just to secure Mr. Pagan's presence for a two-hour hearing regarding certification.

typicality. Although Mr. Hopper's criminal record and current status within the criminal justice system is seemingly not as detrimental as Mr. Pagan's, Mr. Hopper had been disciplined by Defendants on more than one occasion prior to his termination and had a pending workers' compensation lawsuit against Defendants - - both of which circumstances render him atypical from the purported "class." (Hopper Hr'g., 10:20-25; 11:1-25; 12:1; 13:12-25; 56:15-25; 57:1-6; 60:15-20; 63:7-17.) Most importantly though, both Mr. Pagan and Mr. Hopper testified that despite knowing that they were expected to do so, they did not regularly clock in and out for compensable meal breaks. (Pagan Hr'g., 33:3-4; 40:19-20; 42:12-17; Hopper Hr'g., 34:20-25; 35:1-2; 41:11-12; 52:17-18.) As such, their individual situations preclude a finding of typicality between them and any other purported "class" members.

### iv. Class Representative Who is Able to Fairly and Adequately Protect the Interests of the Class as a Whole

The final requirement under Subsection (a) of Rule 23 provides that:

> [B]oth the class representatives and their attorneys must be able to adequately represent the class. "The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent. . . . [A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." The Court must examine whether the class representatives' claims are "antagonistic to the class" and whether the attorneys "are experienced and qualified to prosecute the claims on behalf of the entire class."

*Hall* at *25 (citations omitted).

Defendants do not dispute opposing counsel's ability to adequately represent the class and based upon counsel's representations to this Court regarding their ability and experience in representing class members, adequacy of counsel has been established. However, for the reasons set forth hereinabove regarding "typicality," Mr. Pagan and Mr. Hopper's claims are

15

"antagonistic" to the purported class and they therefore cannot adequately represent any such class in this matter.[11]

### B. Rule 23(b)

Plaintiff asserts that in addition to meeting the requirements set forth above, he has similarly satisfied the requirements of Rule 23(b)(3), which provides as follows:

> (b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied ***and if***:
>
>> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>>
>>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>>
>>> (B) the extent and nature of any litigation concerning the

---

[11] In determining whether or not Mr. Pagan will fairly and adequately protect the class interests, this Court may also consider his individual Fair Labor Standards Act claim against Defendants . . .

> A class representative should never use a class action as leverage to procure a more favorable settlement of non-class claims. ***Even the existence of non-class claims may distract a class representative from vigorously pursuing class claims***. Thus, if a class representative has non-class claims as well as class claims against a defendant, particularly if the non-class claims are asserted in a second lawsuit, one that is separate from the class action, a court may well conclude that the class representative has a disqualifying conflict of interest with the class.

5 James Wm. Moore Et Al., Moore's Federal Practice ¶23.25(2)(b)(vii) (Matthew Bender ed. 2011)(emphasis added).

In addition to the foregoing, this Court is mindful of the testimony by both proposed class representatives in this matter, which, as the record demonstrates, is replete with inconsistencies and severely lacking in credibility. These deficiencies further support this Court's finding that neither Mr. Pagan nor Mr. Hopper could adequately represent the interests of a class.

> controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; ***and***
>
> (D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3)(emphasis added).

For purposes of Rule 23(b)(3),

> Issues are common or individual based on the nature of evidence that will suffice to resolve the issue. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008). Thus "a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Id*. (internal quotation marks omitted). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001). Therefore, "the task for plaintiffs at class certification is to demonstrate that [each] element . . . is capable of proof at trial through evidence that is common to the class rather than individual to its members." *In re Hydrogen Peroxide*, 552 F.3d at 311-12. Predominance requires some inquiry into the merits. *See In re Hydrogen Peroxide*, 552 F.3d at 311.

*Am. Sales Co.* at \*\* 19-20.

Aside from the fact that certification must be denied for Plaintiff's failure to meet the preliminary requirements of Rule 23(a), he similarly fails to meet the requirements of Rule 23(b). Clearly, proof of the essential elements of the cause of action herein would require individual treatment, as is evidenced by the transcripts of proceedings held on March 24, 2010 and August 2, 2010. Each and every purported "class" member would need to be questioned regarding the details of their time cards and whether or not they clocked in and out for meal breaks on every occasion at issue, thereby precluding any finding that the evidence to support Plaintiff's claims would be common to the purported "class" members. Accordingly, Plaintiff has failed to

17

establish predominance, or that a class action is superior to other available methods for fairly and efficiently adjudicating this matter.

**III.** **Conclusion**

For the reasons set forth hereinabove, Plaintiff's Motion for Class Certification and for the Approval of an Additional Class Representative will be denied.

An appropriate Order follows.

BY THE COURT:

/s/  C. Darnell Jones, II   J.